UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
WATERFORD TOWNSHIP POLICE & FIRE
RETIREMENT SYSTEM, Individually and On
Behalf Of All Others Similarly Situated,

                        Plaintiffs,

          - against -

SMITHTOWN BANCORP., INC., et al.,

                        Defendants.
-----------------------------------------------------------------X

**MEMORANDUM & ORDER**

10-CV-864 (SLT) (RER)

**TOWNES, United States District Judge:**

      Lead Plaintiffs Waterford Township Police & Fire Retirement System and Michael L. Cox, on behalf of themselves and other similarly-situated investors who purchased common stock between March 13, 2008, and February 1, 2010, (collectively, "Plaintiffs"), bring this putative class action against Smithtown Bancorp, Inc., ("SBI"), People's United Financial, Inc., ("People's United") and two executives, (collectively, "Defendants"), alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §§ 78j(b), 78t(a), and Securities and Exchange Commission ("SEC") Rule 10b-5, promulgated under 17 C.F.R. § 240.10b-5. Defendants now move to dismiss the consolidated amended class action complaint ("CAC") and to strike certain information from the pleading.

## I.    BACKGROUND

###    A.    Facts

      In this federal securities class action, Plaintiffs essentially claim that Defendants (1) engaged in certain unsound banking practices that rendered SBI unable to timely monitor or

assess the quality of its loan portfolio; (2) failed to maintain an adequate allowance for loan and lease losses ("ALLL"); and (3) issued falsely positive statements concerning these areas in order to complete a number of capital raising transactions on more favorable terms.  According to Plaintiffs, SBI thereafter revealed in a series of disclosures that it would be significantly writing down the value of the loan portfolio and that it had entered into state and federal consent agreements, in response to which the price of SBI common stock dropped, causing injury to Plaintiffs.  The following facts alleged in the CAC are assumed to be true for purposes of the motion to dismiss before the Court.

SBI is a New York State corporate and bank holding company with one direct and wholly owned subsidiary, the Bank of Smithtown (the "Bank"). [1]  (CAC ¶ 11).  During the class period, Bradley E. Rock ("Rock") served as Board Chairman, President and Chief Executive Officer, and Anita M. Florek ("Florek") served first as Executive Vice President, then Chief Financial Officer, and ultimately Chief Accounting Officer of SBI and the Bank, (collectively, "Individual Defendants").  (CAC ¶¶ 12-13).  SBI's senior management was involved in setting the Bank's ALLL, which Plaintiffs contend was understated.  (CAC ¶ 38).

SBI's primary source of revenue is the interest income it receives on its loan portfolio, which constituted more than 90 percent of its total interest income during the class period.  (CAC ¶ 29).  As interest rates declined, SBI rapidly grew its loan portfolio to offset the negative effects of the corresponding reduction in its net interest income.  (CAC ¶¶ 30-31).  While SBI's loan portfolio more than doubled in size between 2007 and 2009, from less than $1 billion to more than $2 billion, (Pls. Opp. at 4; Defs. Mot. at 6), its "charge against earnings for uncollectable loans . . . was artificially understated," even as nonperforming loans increased significantly, until

---

[1] On November 30, 2010, People's United merged with and acquired SBI, assuming the latter's liabilities.  (CAC ¶ 10).

the Federal Deposit Insurance Corporation ("FDIC") "forced Defendants" to increase the amount, (CAC ¶ 96). According to information from a confidential witness ("CW"), SBI did not have the infrastructure necessary to manage its loan portfolio properly, especially after such a rapid expansion. (CAC ¶ 35). For example, the Bank employed only one semi-retired part-time credit review officer to review the entire loan portfolio during the class period. (CAC ¶¶ 36, 57). As a result, the loan portfolio's growth was predicated on "unsafe and unsound banking practices" and investors did not know that SBI was "saddled with tens of millions of dollars of highly risky loans which were overvalued on [SBI's] financial statements and would have to be written down." (AC ¶ 31). The CW also indicated that he believed the ALLL was understated and that a new executive hired by Rock held the same views. (CAC ¶¶ 37, 39). The CAC quotes the CW as stating he resigned from his position because he believed that Rock was "not truthful" about SBI's financial condition. (CAC ¶ 34).

During the class period, SBI filed a series of SEC disclosures and issued press releases which made positive comments about its controls and procedures, as well as the growth and health of its loan portfolio. Plaintiffs allege that these documents and statements "misrepresented and failed to disclose . . . adverse facts . . . known to Defendants or recklessly disregarded by them," including that management failed to operate the Bank in a safe manner, to employ fundamental banking practices, to maintain reasonable ALLL, to maintain sufficient internal controls, and to have a reasonable basis for positive statements. (CAC ¶ 94). Benefiting from the positive statements, SBI was able during the class period to complete a series of transactions that raised approximately $93 million in capital. (CAC ¶ 107). Given the market conditions at the time, SBI would not have been able to raise the money on such favorable terms

but for the "fraudulent concealment of the material overstatement" of its operating results. (CAC ¶ 107).

On November 2, 2009, SBI announced that it would record a $10 million charge for loan losses. (CAC ¶ 111). The price of SBI stock declined approximately 14 percent from the previous day's closing price. (CAC ¶ 111). On January 29, 2010, SBI entered into a consent agreement with the FDIC and a parallel consent order with the New York State Banking Department (jointly, "Consent Order"). (CAC ¶ 41). On February 1, 2010, the last day of the class period, SBI disclosed the Consent Order and announced that it had recorded a $38 million charge to increase its ALLL in the fourth quarter of 2009 and a $7 million charge to write down the value of certain property. (CAC ¶ 95). SBI disclosed that under the terms of the Consent Order the Bank was, <u>inter</u> <u>alia</u>, "required to improve credit administration, loan underwriting and internal loan review processes and maintain an adequate allowance for loan losses." (CAC ¶ 98). After these disclosures, the price of SBI common stock entered a precipitous decline which "removed the inflation" that SBI had "artificially" created through its prior misrepresentations, causing economic loss to Plaintiffs. (CAC ¶¶ 113, 114). Plaintiffs note that in the first half of 2010, which is after the close of the class period, SBI recorded additional charges of $52.5 million. (CAC ¶ 42).

### B. Procedural History

Waterford P&F and George Yourgal filed separate securities actions against SBI on February 25 and March 29, 2010, respectively. Each action was brought on behalf of all those who purchased or acquired SBI stock between March 13, 2008, and February 1, 2010. On August 10, 2011, the Court adopted the report and recommendation of Magistrate Judge Ramon E. Reyes, Jr., to consolidate the cases and appoint lead plaintiff and counsel. (Docket No. 23).

On October 17, 2011, Plaintiffs filed their amended complaint against Smithtown, People's United, and corporate officers Rock and Florek. (Docket No. 25).

In their March 22, 2012, motion presently before the Court, Defendants argue that Plaintiffs' CAC should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for securities fraud under § 10(b), Rule 10b-5, and the heightened pleading requirements of the PSLRA. Defendants also move to strike certain statements pursuant to Federal Rule of Civil Procedure 12(f). (Docket No. 27 ("Defs. Mem.")). Plaintiffs oppose the motion and request, if necessary, permission to amend their pleading. (Docket No. 32 ("Pls. Opp.") at 25 n.22).

## II.     LEGAL STANDARD

### A.     Rule 12(b)(6)

In considering a motion to dismiss pursuant to Rule 12(b)(6), a court must accept all factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007). A court's role at this stage is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. If plaintiffs "have not nudged

their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 570.

While materials outside the four corners of the complaint are "generally not considered on a motion to dismiss unless the court treats it as one for summary judgment," Nicholls v. Brookdale Univ. Hosp. Med. Ctr., No. 03-CV-6233, 2004 WL 1533831, at *2 (E.D.N.Y. July 9, 2004), a court may consider "documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . documents either in plaintiff's possession or of which plaintiffs had knowledge and relied on in bringing suit," Brass v. Am. Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993) (citing Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991)).

**B.      Rule 9(b) and PSLRA**

Securities fraud claims must also meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and the PSLRA to survive a motion to dismiss. See City of Omaha, Neb. Civilian Employees Ret. Sys. v. CBS Corp., 679 F.3d 64, 67 (2d Cir. 2012); ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007). Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud." A complaint based upon misstatements therefore must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." ATSI, 493 F.3d at 99 (citing Novak v. Kasaks, 216 F.3d 300, 306 (2d Cir. 2000)). The PSLRA's pleading standard "mimics the standard the Second Circuit had derived from Rule 9(b)," Lewy v. Skypeople Fruit Juice, Inc., No. 11 Civ. 2700 (PKC), 2012 WL 3957916, at *7 (S.D.N.Y. Sept. 10, 2012), but additionally requires a plaintiff in a private securities fraud action to "state with particularity facts giving rise to a strong

6

inference that the defendant acted with the required state of mind." Press v. Chem. Inv. Servs. Corp., 166 F.3d 529, 538 (2d Cir. 1999) (quoting 15 U.S.C. § 78u-4(b)(2)).

### III. DISCUSSION

#### A. Section 10(b) Claim

To state a private securities fraud claim based on violations of § 10(b) and Rule 10b-5, a plaintiff must allege "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." Pac. Inv. Mgmt. Co. v. Mayer Brown LLP, 603 F.3d 144, 151 (2d Cir. 2010).

As to the first element, the PSLRA requires that a complaint in a securities fraud action "specify each misleading statement" and "set forth the facts on which a belief that a statement is misleading was formed." Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71, 82 (2006). For a statement to qualify as material, "there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." In re Fannie Mae 2008 Securities Litigation, 891 F. Supp. 2d 458, 470 (S.D.N.Y. 2012) (quoting Basic Inc. v. Levinson, 485 U.S. 224, 231-32 (1988)) (internal quotation marks and bracketing omitted). "An omitted fact may be immaterial if the information is trivial, or is so basic that any investor could be expected to know it." Id. (quoting Ganino v. Citizens Utils. Co., 228 F.3d 154, 162 (2d Cir. 2000)) (internal citations omitted).

Plaintiffs seek in their opposition papers to corral the alleged misstatements into a number of categories, concerning: (1) the effectiveness of SBI's internal controls over financial

reporting; (2) the adequacy of its ALLL; (3) its efforts in monitoring its loan portfolio; (4) the quality of its loan assets (5) its financial results; (6) the quality of its capital ratios; (7) its competitive position; and (8) its compliance with the U.S. generally accepted accounting principles ("GAAP"). (Pls. Opp. at 1-2).

With regard to statements concerning SBI's financial reporting, financial results, capital ratios, and competitive position, the Court finds that these are not actionable as they are "mere business 'puffery,'" meaning "generalizations about a company's business practices and integrity . . . so general that a reasonable investor would not depend on those statements." Boca Raton Firefighters and Police Pension Fund v. Bahash, No. 12-1776-cv, 2012 WL 6621391, at *3 (2d Cir. Dec. 20, 2012) (citations, internal quotation marks, bracketing omitted). Putting the alleged GAAP violations aside for the moment, as such "irregularities, standing alone, are insufficient to state a securities fraud claim," Novak, 216 F.3d at 309 (quotations and citations omitted), the Court is left with what appears to be the core of Plaintiffs' material misstatement allegations: that, contrary to SBI's public statements, (1) Defendants were reckless as to the quality and monitoring of their loan portfolio; and (2) Defendants subjectively believed that the ALLL was understated. (See Pls. Opp. at 9).

The Court cannot overlook, however, the problematic form of the pleading in this case. The CAC contains many long block quotes of public statements made by SBI, with smaller sections alleged to be misleading highlighted in bold. (See, e.g., CAC ¶¶ 53, 59, 61-62, 64, 66, 68, 71, 72, 75, 76, 79, 80, 87, 92, 98, 108). These block quotes often follow one after the other without Plaintiffs' explaining how and why each individual section is misleading. Such pleading does not, typically, satisfy the PSLRA. See Tabor v. Bodisen Biotech, Inc., 579 F. Supp. 2d 438, 453 (S.D.N.Y. 2008) ("Plaintiffs['] use of large block quotes from SEC filings and press

8

releases, followed by generalized explanations of how the statements were false or misleading are not sufficient to satisfy the heightened pleading requirements."); In re Alcatel Securities Litigation, 382 F. Supp. 2d 513, 534 (S.D.N.Y. 2005) ("Plaintiffs neglect to make it clear . . . which statements link up with which issues in the laundry list, placing the burden on the Court to sort out the alleged misrepresentations and then match them with the corresponding adverse facts. This method is deficient under the pleading standards."). Accordingly, Court One against all Defendants is dismissed without prejudice.

B. **Section 20(a) Claim**

With regard to Individual Defendants, "[t]o establish a prima facie violation of control person liability, a plaintiff must show (1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." ATSI, 493 F.3d at 108; see 15 U.S.C. § 78t(a). As the CAC fails in its current form to plead facts making out a violation of Section 10(b), Plaintiffs cannot meet the "primary violation" element of Section 20(a). Count Two against Individual Defendants therefore is dismissed without prejudice.

C. **Motion to Strike**

Defendants have also moved to strike from the CAC all references to the Consent Order and information derived from the CW, pursuant to Rule 12(f), which permits a court to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Resolution of such motions is left to the discretion of the district court, E.E.O.C. v. Bay Ridge Toyota, Inc., 327 F. Supp. 2d 167, 170 (E.D.N.Y. 2004), but motions to strike generally are "viewed with disfavor and infrequently granted," In re Platinum and Palladium Commodities Lit., 828 F. Supp. 2d 588, 593 (S.D.N.Y. 2011), and "courts should not tamper with the pleadings unless there is a

9

strong reason for so doing," Lipsky v. Commonwealth United Corp., 551 F.2d 887, 893 (2d Cir. 1976). With regard to the affidavit Defendants have submitted in support of their motion – in which the CW denies several statements attributed to him in the CAC – a district court has two options when materials outside the pleadings are offered: "the court may exclude the additional material and decide the motion on the complaint alone or it may convert the motion to one for summary judgment . . . and afford all parties the opportunity to present supporting material." Kopec v. Coughlin, 922 F.2d 152, 154 (2d Cir. 1991). There is no apparent justification for the Court to convert the motion in this case.

With regard to the Consent Order, the Second Circuit has held, and Plaintiffs concede, that generally "a consent judgment between a federal agency and a private corporation which is not the result of an actual adjudication of any of the issues . . . can not be used as evidence in subsequent litigation." Lipsky, 551 F.2d at 893. Indeed, Lipsky instructs "that references to preliminary steps in litigations and administrative proceedings that did not result in an adjudication on the merits or legal or permissible findings of fact are, as a matter of law, immaterial under Rule 12(f)." In re Platinum, 828 F. Supp. 2d at 593 (quoting In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig., 218 F.R.D. 76, 78 (S.D.N.Y. 2003)); see also Gotlin v. Lederman, 367 F. Supp. 2d 349, 363 (E.D.N.Y. 2005) ("[C]ourts hold that references in pleadings to agreements with state or federal agencies may properly be stricken on a Rule 12(f) motion."). It is also true, however, that courts have found "consent decrees admissible to prove matters other than the truth of the allegations that led to the settlements," Dent v. U.S. Tennis Ass'n, Inc., No. CV-08-1533 (RJD) (VVP), 2008 WL 2483288, at *2 (E.D.N.Y. June 17, 2008) (collecting cases).

10

In any event, the Court need not decide these issues at this time because it has dismissed the CAC without prejudice. Defendants' motion to strike the Consent Order and the CW information contained in the SAC therefore is denied as moot.

IV. **CONCLUSION**

For the reasons set forth above, Defendants' motion to dismiss the consolidated class action complaint is GRANTED without prejudice and Defendants' motion to strike is DENIED without prejudice as moot. Plaintiffs must serve and file their amended complaint by April 30, 2013.

**SO ORDERED.**

_____/S/_____
SANDRA L. TOWNES
United States District Judge

Dated: March 29, 2013
Brooklyn, New York